[Civ. No. 4242. First Appellate District, Division One.—November 15, 1922.]

MANUEL MATOZA, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

[1] RAILROADS—USE OF TRACKS—OBSTRUCTION OF PRIVATE CROSSING— DAMNUM ABSQUE INJURIA.—The right of a railroad company to the use of its railroad tracks in the proper conduct of its business is paramount to the right of an individual to the use of a private crossing traversing such tracks, and if by reason of such proper operation said individual suffers damage from being temporarily unable to use his crossing, this constitutes merely *damnum absque injuria,* of which he cannot complain.

[2] Id.—Arbitrary Obstruction of Crossing—Liability for Damage.
A railroad company cannot unnecessarily and arbitrarily obstruct a
private crossing traversing its tracks without incurring liability
for damage proximately resulting therefrom.

[3] Id.—Movement and Management of Trains—Abuse of Dis-
cretion—Damages.—While a very wide discretion should be recog-
nized in a railroad company upon the question of the proper
operation of its business and the movement and management of
its trains, and a court should not lightly regard the judgment and
opinion of experienced and responsible employees of the company
as to what constitutes proper operation under a given set of cir-
cumstances, where the court finds from the evidence that such dis-
cretion has been abused the railroad company may properly be
called upon to respond in damages to a person suffering from its
arbitrary action.

[4] Id.—Death of Cows—Negligence of Railroad Company—Evi-
dence—Finding.—In this action against a railroad company for
damages for the death of certain cows, alleged to have been
caused by the negligence of the defendant in obstructing a private
farm crossing traversing its railroad tracks so that plaintiff was
prevented from removing his herd from a field of green alfalfa,
as a consequence of which some of the herd consumed too much
of the succulent pasture and died, the evidence of plaintiff having
shown that the conductor of the train, which was on a siding,
had ample time to part the cars of the train and open the cross-
ing, as requested by plaintiff, and reattach them and get the train
ready by the refilling of the air tanks so that it could take the
main line when by the passing of a certain passenger train it
should be free to do so, and that evidence having been accepted
by the court, the appellate court could not say that the conclusion
that the injury to plaintiff's herd resulted from the defendant's
negligence was not sustained by the evidence.

[5] Id.—Blocking of Crossing by Two Trains—Sufficiency of
Notice of Desire to Cross.—If the plaintiff's request to the con-
ductor of the train that moved on to the siding and blocked plain-
tiff's crossing had been complied with, and plaintiff had failed
to notify the conductor of the train standing on the main line,
or some other responsible agent of defendant, of his desire to
cross the track, such failure could be availed of in an action
against defendant for damages for negligently blocking the cross-
ing, but so long as plaintiff's request to the conductor of the
train standing on the siding remained uncomplied with, the failure
to notify the conductor of the train opposite it on the main line
did not constitute a defense to such action.

APPEAL from a judgment of the Superior Court of
Alameda County. James G. Quinn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Geo. K. Ford and Elliott Johnson for Appellant.

A. A. Rogers and Henry G. Tardy for Respondent.

KERRIGAN, J.—The action is brought by plaintiff for the recovery of damages for the death of four cows, and certain expenses incident to their treatment in an effort to save them, alleged to have been caused by the negligence of the defendant in obstructing a private farm crossing traversing its railroad tracks so that the plaintiff was prevented from removing his herd of dairy cows from a field of green alfalfa, in consequence of which some of the herd consumed too much of the succulent pasture, four of them dying from the effects thereof.

Judgment went for plaintiff in the sum of $680, and the defendant appeals.

The main finding of the court and upon which this judgment is based is that the defendant negligently obstructed said private farm crossing, and maintained said obstruction after being apprised of the danger to plaintiff's cows arising therefrom.

The appellant urges two points in support of this appeal, namely, that its right to the use of its railroad track was paramount to the right of the plaintiff to the use of his private farm crossing thereover, and that as the obstruction complained of was one necessarily incidental to the proper operation of its railroad it could not be charged with negligence in the matter, whatever the effect of such necessary obstruction might be upon the property of the plaintiff; and, second, that the plaintiff was guilty of contributory negligence, which would prevent him from recovering damages.

The facts of the case may be summarized as follows: The defendant operates a line of railroad between Oakland and San Jose. At Alvarado on said line it maintains a depot adjacent to which is a siding. At this point is a farm lying on both sides of said railroad, of which the plaintiff is the lessee, the plaintiff's buildings and corrals being on one side of the track and on the other a field in which at the time of the occurrence of the events giving rise to the action

there was growing a crop of alfalfa.  One afternoon at about 4 o'clock the plaintiff drove his herd of eighty-four cows from his corrals into the alfalfa field, using said farm crossing, his intention being to allow them to feed there not longer than twenty minutes, a longer period not being permissible, owing to the danger of the cows overfeeding and suffering from the effects thereof.  Almost immediately after driving the herd into said field he noticed that a long freight train of the defendant was moved upon said siding so as to block his crossing.  This freight train was known as No. 802.  He thereupon requested the conductor of said train to part it at the point of the crossing, as it would in a few minutes be necessary for him to recross the track with his herd, and, according to the finding of the trial court, informed the conductor of the danger to his cows if their egress from the alfalfa field should be prevented.  The conductor asked where the crossing was, the plaintiff gave him the information, and the conductor proceeded to the point apparently for the purpose of complying with the plaintiff's request.  In the meantime another freight train (No. 801) pulled up on the main line and stopped opposite said first train, it also blocking the crossing.  Train 802 was on its way to San Jose and was waiting at this point for a passenger train bound for Oakland to pass it before it could proceed on its way.  Train No. 801 was proceeding to Oakland, and was to be overtaken and passed at this point by said passenger train.  The passenger train was due at 4:44.  It was late, and did not arrive until 4:56, but the fact that it would not arrive on time was not known to the conductor of No. 802.  The plaintiff made no request to the conductor of No. 801 to move the train or part it at the crossing, apparently thinking that it was sufficient that he had requested the employee in charge of No. 802 to open the crossing.  Having made such request the plaintiff proceeded to assemble his herd of cows at the crossing gate; but the conductor of No. 802, being of the opinion that to part his train or otherwise open the crossing would result in delaying the passenger train (his testimony as to the time at which the plaintiff's demand that the crossing be opened was made placing it much later than the testimony given by the plaintiff) took no steps to effect the opening, so that the plaintiff was compelled to wait at

the crossing gate until about 5 o'clock, when the delayed passenger train having arrived, No. 802 proceeded on its way, as did also the passenger and No. 801, leaving the farm crossing unobstructed. Some of the plaintiff's herd had in the meantime consumed too much green alfalfa, from the effects of which four of the cows sickened and died in spite of the efforts of the plaintiff and a veterinary to save them.

[1]    The appellant urges in support of its appeal that it had the paramount right to the use of its tracks in the operation of its railroad, and that the plaintiff's right to the use of his farm crossing was subordinate to this right, and, if by reason of the occupancy by the railroad company of its main line and siding in the prosecution of its business the plaintiff was temporarily unable to use his crossing, such disability arose from the nature of the situation; that the railroad company owed no duty to the plaintiff of which there could be a breach giving rise to a remedy against it.

There can be no doubt that the defendant's right to the use of its railroad tracks in the proper conduct of its business was paramount to the plaintiff's right of crossing (*Kansas Central Ry. Co.* v. *Allen*, 22 Kan. 203 [31 Am. Rep. 190] ; *Clayton* v. *Chicago I. & D. Ry. Co.*, 67 Iowa, 238 [25 N. W. 150] ; *Gratz* v. *Lake Erie & W. R. Co.*, 76 Ohio St. 230 [81 N. E. 239] ; *Atchison & Neb. R. R. Co.* v. *Gough*, 29 Kan. 94] ; *Atchison T. & S. F. R. Co.* v. *Conlon*, 9 Kan. App. 338 [61 Pac. 321] ) ; and that if by reason of such proper operation the plaintiff suffered damage from being temporarily unable to use his crossing, this would constitute merely *damnum absque injuria*, of which he could not complain. [2]    But since it is admitted that the right to cross the defendant's tracks at the point involved in this action did in fact exist, it must follow that the defendant could not unnecessarily and arbitrarily obstruct the crossing without incurring liability for damage proximately resulting from such obstruction. To hold otherwise would amount to a denial of the plaintiff's right. [3]    We think a very wide discretion should be recognized in the railroad company upon the question of the proper operation of its business, and the movement and management of its trains, and that a court should not lightly regard the judgment and opinion of experienced and responsible employees of the company as

to what constitutes proper operation under a given set of circumstances.   Where, however, it finds from the evidence that such discretion has been abused the railroad company may properly be called upon to respond in damages to a person suffering from its arbitrary action.

[4]   The evidence in this case mainly turns upon the amount of time which the conductor of No. 802 had in which to open the plaintiff's crossing by parting the cars of his train, and reattaching them and getting the train ready by the refilling of its air tanks so that it could take the main line when by the passing of the passenger train it should be free to do so.   There was evidence that these operations could have been completed in fifteen minutes. The evidence as to the time elapsing between the notification to the conductor of No. 802 by the plaintiff that he must have the train parted to allow his cattle to use the crossing, and the time when the passenger train was due, was in direct conflict, as was also that as to the conversation, if any, had between them; and we may say at once that if the trial court had accepted the testimony of the railroad employees upon these points it could not have arrived at the conclusion that the damage of which the plaintiff complains arose from any fault of the defendant; but it evidently accepted the testimony of the plaintiff, which gave to the defendant's employees at least 30 minutes to effect an operation admittedly requiring not more than fifteen.   The court having accepted this testimony we are unable to say that its conclusion that the injury to the plaintiff's herd resulted from the defendant's negligence is not sustained by the evidence.

[5]   The appellant also refers to the fact, as a ground for holding the trial court's conclusion to be erroneous, that the crossing at the time in question was blocked not only by train 802 but by 801 also, so that if said conductor had complied with the plaintiff's request and parted his train, the crossing nevertheless would have remained obstructed, since admittedly the plaintiff took no action with regard to No. 801.   We think the answer to this is that so long as No. 802 blocked the crossing it would have availed plaintiff nothing to have removed the impediment of No. 801; and that if the plaintiff's request to the conductor of 802 had been complied with, and the plaintiff had failed to notify

the conductor of 801 of his desire to cross the track, or some responsible agent the scope of whose duties would bind the company by such notification, such failure could be availed of in this case, but not so long as the plaintiff's request to the conductor of No. 802 remained uncomplied with.

Complaint is also made by the appellant that the judgment is erroneous since the plaintiff's own negligence contributed to his damage, this contention being based upon certain evidence that the plaintiff failed to take proper steps to remove his cattle from the alfalfa field by other means when he discovered that the obstruction to his crossing was not to be removed. As to this point also the evidence is in conflict, and the trial court chose to accept that version of it which would absolve the plaintiff from the contributory negligence suggested.

It follows from the foregoing that the judgment shouldl be affirmed, and it is so ordered.

Tyler, P. J., and St. Sure, J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 11, 1923.

All the Justices present concurred.